UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

HANEEF SHAKEEL JACKSON-BEY,

v.                                              CASE NO. 5:24-cv-26-SDM-PRL

E.K. CARLTON, et al.,

_____/

## ORDER

Jackson-Bey's complaint (Doc. 1) alleges that the defendants violated his civil rights while he was incarcerated at FCC Coleman. Jackson-Bey proceeds *in forma pauperis*. (Doc. 7) The Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(e), requires dismissal of an *in forma pauperis* prisoner's case "if the allegation of poverty is untrue" or if the case "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief."

## I.    BACKGROUND: JACKSON-BEY'S ALLEGATIONS

Jackson-Bey claims officials at Coleman targeted him because of his race, religion, and "committed offense" when they harassed and threatened him, used excessive force against him, imposed excessive lockdowns and unconstitutional conditions of confinement on him, denied him medical and mental health treatment, and suppressed his grievances. (Doc. 1 at 12–13) Jackson-Bey does not specify when most of these incidents occurred.

First, Jackson-Bey claims officials harassed and threatened him. In one instance, disciplinary hearing officer White told Jackson-Bey he looks like a stalker, and Jackson-Bey asked her not to speak to him in that manner. (Doc. 1 at 18) In response, White used explicit language and took away Jackson-Bey's recreation time. (Doc. 1 at 18) White's "senior co-worker" verbally reprimanded her but approved the revocation of Jackson-Bey's recreation time. (Doc. 1 at 18) In another instance, when custody officer Bylicky arrived at Jackson-Bey's cell at lunch time, Bylicky placed two apples in the cell's lock box and made a sexual innuendo towards Jackson-Bey. (Doc. 1 at 20) Jackson-Bey requested to see a psychologist in response and Bylicky denied the request. (Doc. 1 at 20) Jackson-Bey claims custody officer Speerly and drug treatment specialist Leeper provoked him with insults and threats during unspecified instances. (Doc. 1 at 19–21)

Second, Jackson-Bey claims officials used excessive force against him. On November 23, 2023, lieutenant Cordero organized a display of force by officials to intimidate prisoners who complained about working on Thanksgiving. (Doc. 1 at 21, 23) The officials brandished their riot rifles and "extra-large . . . pepper gas weaponry" to challenge the inmates. (Doc. 1 at 21, 23) On December 8, 2023, lieutenant Rodriguez "belligerent[ly]" dismissed inmate complaints that the telephones were de-activated. (Doc. 1 at 29) Jackson-Bey "intervened" and Rodriguez berated him with "foul language and aggression." (Doc. 1 at 29) Rodriguez isolated Jackson-Bey into a dark area where he backed Jackson-Bey up to a window, pressed his index finger into Jackson-Bey's chest, and threatened to beat

him. (Doc. 1 at 29–30) During the incident, custody officer Jay and custody officer Wright were present and "man[ned] their use-of-force weaponry." (Doc. 1 at 30) Jay and Wright refused to report the incident upon Jackson-Bey's request. (Doc. 1 at 30) Jackson-Bey claims, without particularizing the incidents, that unspecified defendants used "egregious racial implications" to provoke inmates into assaulting them to justify the use of force and application of restraints. (Doc. 1 at 13)

Third, Jackson-Bey claims that officials imposed excessive lockdowns and unconstitutional conditions of confinement on him. Between August 28, 2023, and October 5, 2023, unnamed officials forced Jackson-Bey to live in a "biohazardous[,] inoperable" cell with no mattress, to sleep on an iron bunk rack, and to eat malnutritional meals. (Doc. 1 at 13, 16–17) In addition, the cell's toilet water pressure was weak, and the toilets locked for thirty minutes after a flush causing waste to stew. (Doc. 1 at 13) Officials refused to give the inmates cleaning supplies and restricted them from taking showers, contacting their families and societal peers, and charging their personal electronic devices. (Doc. 1 at 16–17) Eventually, officials moved Jackson-Bey to another cell that was also a "biohazard." (Doc. 1 at 17) The second cell had "busted sprinkler head rust[;]smeared feces on the walls, doors, bunks, floor and mirror[;] and a great mass of maggots and flies[.]" (Doc. 1 at 17) Inmates spent nearly the entirety of each day in the cell while eating breakfast, lunch, and dinner. (Doc. 1 at 17)

Fourth, Jackson-Bey claims officials denied him medical and mental health treatment. Between August 2023 and October 2023, Leeper denied Jackson-Bey

residential drug abuse treatment based on his race and ethnicity. (Doc. 1 at 19)

Leeper told Jackson-Bey that he could receive treatment if he changed the way he

looked. (Doc. 1 at 19) Around November 23, 2023, Jackson-Bey activated his

emergency duress alarm to request psychology services, and in response Bylicky and

custody officer Polk encouraged Jackson-Bey to commit suicide. (Doc. 1 at 23)

Jackson-Bey submitted a formal complaint regarding the November 23 incident.

(Doc. 1 at 24–25) On December 4, 2023, Bylicky and Polk retaliated against Jackson-

Bey for complaining when they removed the inmate-approved chair from his cell and

substituted a lower grade chair. (Doc. 1 at 24–25)

Further, between September 2023 and December 2023, Jackson-Bey claims he

emailed the "unknown named head psychologist" defendant to request help for his

deteriorating mental health and opioid use disorder. (Doc. 1 at 26–28) In response,

the head psychologist defendant stated that he would schedule a visit for Jackson-

Bey, but this has not happened. (Doc. 1 at 28) In addition, drug treatment specialist

Dr. Smith removed Jackson-Bey from the drug abuse program because he refused to

participate in a Christian holiday program—a ritual "deemed sacrilegious to his

preferred divine creed of Islamism." (Doc. 1 at 21–22)

Fifth, Jackson-Bey claims that officials suppressed his grievances. Between

September 2023 and November 2023, correctional counselor Taylor and case

manager Bailey regularly refused to give Jackson-Bey grievance forms and gave

generic and baseless comments in response to his grievances. (Doc. 1 at 22) On

December 5, 2023, case manager Connelly used racist language when refusing to

4

accept and process Jackson-Bey's formal request for a sentence reduction and compassionate relief. (Doc. 1 at 25) Between September 2023 and January 2024, associate warden Burkett refused to process inmate grievances and used unparticularized "unethical deflection tactics" to discourage Jackson-Bey from filing grievances. (Doc. 1 at 5, 14–15)

Finally, Jackson-Bey claims that the supervisor defendants—warden E.K. Carlton, Burkett, White, and Bylicky—failed to enforce the Federal Bureau of Prisons' policy directives, used derogatory and disparaging gestures and language, issued punitive reprisals, and ignored his grievances. (Doc. 1 at 4–6, 11–15, 18) In doing so, the supervisor defendants aided, abetted, and facilitated constitutional violations and allowed "degenerate" officials to "jeopardize[e] the integrity, safety[,] and security" of the prison. (Doc. 1 at 15)

These constitutional violations caused Jackson-Bey to develop opioid use disorder, experience manic episodes during which he contemplates suicide, pursue "other reckless ventures," and experience "a severe increase in preexisting bodily pains." (Doc. 1 at 14)

## II.    DISCUSSION

Jackson-Bey sues seventeen federal officials under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1972), alleging violations of his First Amendment, Fifth Amendment,[1] and Eighth Amendment rights.

In *Bivens*, the Supreme Court recognized an implied right of action for damages against federal officials sued in their individual capacities for Fourth Amendment violations. *Id.* at 394–97. The Court extended *Bivens* to a Fifth Amendment claim against a congressman who fired his secretary based on her sex, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and an Eighth Amendment claim against prison officials for failure to provide medical treatment, *Carlson v. Green*, 446 U.S. 14, 19–23 (1980). After *Bivens*, *Davis*, and *Carlson*, the Supreme Court "adopted a far more cautious course" before implying causes of action, and thus, "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'" *Ziglar v. Abbasi*, 582 U.S. 120, 132, 135 (2017) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). The Supreme Court "has made [it] clear that expanding" *Bivens* is now "disfavored." *Ziglar*, 582 U.S. at 135 (citation omitted).

A two-step inquiry determines whether a claim is actionable under *Bivens*. First, "ask whether the case presents a new *Bivens* context—i.e., is it meaningfully different from the three cases in which the [Supreme] Court [] implied a damages

---

[1] Although Jackson-Bey does not specifically allege that the defendants violated his Fifth Amendment right to due process and equal protection, his filing is generously construed as asserting a violation of these rights.

action." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (cleaned up). "[F]or a case to arise in a previously recognized *Bivens* context, it is not enough that the case involves the same constitutional right and 'mechanism of injury[]'" as a previously recognized context. *Johnson v. Terry*, 112 F.4th 995, 1006 (11th Cir. 2024) (citing *Ziglar*, 582 U.S. at 138–39); *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020). "The inquiry is 'whether the two cases have any relevant differences, not whether they are mostly the same.'" *Johnson v. Terry*, 112 F.4th at 1014. Even a small difference can present a new context. *See id.*

Second, if the case presents a new context, a *Bivens* remedy is "unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1007 (quoting *Egbert*, 596 U.S. at 492). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492. "One notable special factor is the existence of an alternative remedial structure." *Johnson v. Terry*, 112 F.4th at 1014–15. Importantly, the Eleventh Circuit recently ruled that the existence of the Federal Bureau of Prisons' administrative remedy program, alone, counseled against extending *Bivens* to a prisoner's claim. *Id.* at 1015–17; *see also Malesko*, 534 U.S. at 74.

Another factor counseling hesitation is legislative action suggesting that Congress does not want a damages remedy. *Ziglar*, 582 U.S. at 148. Specifically, as the Supreme Court noted in *Ziglar*:

7

> Some 15 years after *Carlson* [*v. Green*] was decided, Congress passed the [PLRA], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion requirements would apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Id.* at 148–49 (internal citations omitted). As other courts have recognized, Congress has been active in prisoner's rights and has not created a damages remedy against an individual officer. *See, e.g.*, *Berry v. Bureau of Prisons*, No. 5:20-cv-424-KKM-PRL, 2021 WL 4166181, at *3 (M.D. Fla. July 27, 2021) (explaining that the choice by Congress to not create a damages remedy for cases like this one "forecloses this [c]ourt from taking it upon itself to legislate monetary damages for constitutional claims where the legislative branch elected not to do so"); *Dugan v. Scott*, No. 5:13-cv-235-Oc-32PRL, 2019 WL 4737609, at *5 (M.D. Fla. Sept. 27, 2019) ("[g]iven Congress's active role in the area of prisoner rights, this factor causes the Court to 'hesitate' and weighs against extending [the] *Bivens* remedy in this case"); *McRae v. Lockett*, No. 5:17-cv-299-Oc-02PRL, 2019 WL 2303264, at *6 (M.D. Fla. May 30, 2019) ("While Congress's failure to create a damages remedy is not definitive, the fact remains that Congress has been active in the area of prisoners' rights and has not created a damages remedy.").

8

### a. First Amendment

Jackson-Bey alleges several First Amendment violations. First, Jackson-Bey claims that prison officials suppressed his First Amendment right when they refused to provide grievance forms, used "unethical deflection tactics" to disincentivize him from grieving issues, and denied his grievances. Second, Jackson-Bey claims that officials retaliated against him for grieving issues. Third, Jackson-Bey claims that officials conditioned drug addiction treatment on his participation in religious programs.

In *Egbert* the Supreme Court stated that "we have never held that *Bivens* extends to First Amendment Claims[,]" and expressly confirmed that "there is no *Bivens* action for First Amendment retaliation." *Egbert*, 596 U.S. at 1807; *see also Bush v. Lucas*, 462 U.S. 367, 368 (1983) (*Bivens* does not extend to "federal employees whose First Amendment rights are violated by their superiors."). Therefore, Jackson-Bey's First Amendment retaliation claim is not cognizable under *Bivens*. Jackson-Bey's other First Amendment claims present new *Bivens* contexts and, consequently, require consideration of whether special factors counsel against extending *Bivens*. *See Ziglar*, 582 U.S. at 136.

The Federal Bureau of Prisons' administrative remedy program provides Jackson-Bey a remedy for his First Amendment claims. *See Malesko*, 534 U.S. at 74 (citing 28 C.F.R. § 542.10 (2001)). Further, Congress's power includes allowing a damages claim for violating a prisoner's First Amendment right, and as the Supreme

Court stated, "[t]he Judiciary is ill-equipped to alter" the framework established by Congress for addressing conduct that allegedly violates the Constitution, "especially [] when it comes to First Amendment claims." *Egbert*, 596 U.S. at 500. Because Jackson-Bey's claims present new *Bivens* contexts and special factors counsel against extending *Bivens*, his First Amendment claims are dismissed.

### b. Fifth Amendment

Jackson-Bey seems to assert violations of his Fifth Amendment right to equal protection and due process. Under the Equal Protection Clause, Jackson-Bey alleges Leeper denied him medical care because of his race and Dr. Smith denied him participation in the drug abuse program because of his religion. Under the Due Process Clause, Jackson-Bey alleges that without due process he and other inmates were locked in their cells for excessive durations.

In *Davis*, the Supreme Court created a *Bivens* cause of action under the Fifth Amendment when a congressman fired his secretary based on her sex. *Davis*, 442 U.S. at 248–49. Although Jackson-Bey's claims arise under the same constitutional provision as the claim in *Davis*, Jackson-Bey claims that officials discriminated against him because of his race and religion, not his sex. In addition, Jackson-Bey sues prison officials, rather than his employer. Further, Jackson-Bey asserts that officials discriminated against him by denying him medical care and participation in a drug abuse program. Jackson-Bey's claims meaningfully differ from *Davis*. *See Johnson v. Terry*, 112 F.4th at 1012–14; *see also Solomon v. Antonelli*, No. 5:22-CV-483-

WWB-PRL, 2024 WL 3465195, at *5 (M.D. Fla. July 1, 2024) (collecting cases in which prisoner Fifth Amendment claims were meaningfully different from *Davis*).

Excepting *Davis*, the Supreme Court has not extended *Bivens* to an equal protection or due process claim. *See Ziglar*, 582 U.S. at 138 (declining to extend *Bivens* to equal protection and due process violations resulting from detention policies and conditions of confinement); *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (declining to extend *Bivens* to due process violations resulting from Social Security disability benefit denials); *Chappell v. Wallace*, 462 U.S. 296, 297, 304–05 (1983) (declining to extend *Bivens* to a race-discrimination suit against military officers). Because Jackson-Bey's claims meaningfully differ from cases in which the Supreme Court extended *Bivens*, the claims present new *Bivens* contexts. *See Hernandez*, 589 U.S. at 103; *Johnson v. Terry*, 112 F.4th at 1006 (citing *Ziglar*, 582 U.S. at 138–39).

Special factors counsel against extending *Bivens* to this context. The existence of the Bureau of Prisons administrative remedy program is an alternative remedy for Jackson-Bey's complaints. *See Johnson*, 112 F.4th at 1014–15 (citation omitted). Consequently, expanding *Bivens* to this context, "would 'arrogate legislative power' and allow federal prisoners to bypass the grievance process put in place by Congress through the Executive Branch." *See id.* at 1017. Congress's failure to create a remedy for Jackson-Bey's alleged harm — despite Congress's activity in prisoner rights legislation — counsels against extending *Bivens* to Jackson-Bey's claims. *See Ziglar*, 582 U.S. at 148; *see also Turner v. Safley*, 482 U.S. 78, 84–85 (1987) ("[r]unning a

11

prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources" and those tasks fall "peculiarly within the province of the legislative and executive branches."). Therefore, Jackson-Bey's Fifth Amendment claims are dismissed.

### c. Eighth Amendment

Jackson-Bey alleges several Eighth Amendment violations. First, Jackson-Bey claims the harassment, lock-ups, inhumane conditions, and denial of necessities constituted cruel and unusual punishment. Second, Jackson-Bey brings an excessive force claim. Third, Jackson-Bey claims the denial of medical treatment constituted deliberate indifference to his serious medical needs.

The Supreme Court extended *Bivens* to one Eighth Amendment claim for deliberate indifference to a prisoner's serious medical need. *See Carlson*, 446 U.S. at 19–23; *see also Ziglar*, 582 U.S. at 138 (declining to extend *Bivens* to a Fifth Amendment conditions of confinement claim); *Egbert*, 596 U.S. at 486 (declining to extend *Bivens* to an excessive force claim against a Border Patrol agent). In *Carlson*, a prisoner was housed — against the advice of doctors and despite his known medical condition — at a facility with inadequate medical care. *Carlson*, 446 U.S. at 16, 17 n.1. Prison officials provided the prisoner inadequate medical care after an asthma attack, administered contra-indicated medication, provided an inoperative respirator that impeded his breathing, and did not timely transfer him to an outside hospital. *Id.* at 17. The officials' actions resulted in the prisoner's death. *Id.*

Jackson-Bey's cruel and unusual punishment and excessive force claims have nothing in common with the *Carlson* claim besides the fact that they arose under the same constitutional amendment and the facts underlying them occurred in prison. Thus, Jackson-Bey's cruel and unusual punishment and excessive force claims present new *Bivens* contexts. Jackson-Bey's deliberate indifference claim alleges that officials denied him drug treatment and mental health care because of his race and religion. In *Johnson v. Terry*, the Eleventh Circuit found a plaintiff's claim that "involve[d] prison officials, medical officers in the prison, and the deprivation of 'medically necessary assistance[,]'" did not arise in the "same context" as *Carlson* because the two cases shared only "superficial similarities." *Johnson v. Terry*, 112 F.4th at 1014. Like the plaintiff in *Johnson v. Terry*, Jackson-Bey does not present a claim that he "died from an asthma attack when officials failed to provide the medical care required." *Id.* Consequently, the Eleventh Circuit's reasoning in *Johnson v. Terry* applies equally to this action and Jackson-Bey's deliberate indifference claim presents a new *Bivens* context.

In *Johnson v. Terry*, the Eleventh Circuit found the Federal Bureau of Prison's administrative remedy program was an alternative remedy for an Eighth Amendment deliberate indifference claim, and the program's existence counseled against extending *Bivens* to Johnson's claim. *Id.* at 1014–17. The Federal Bureau of Prison's administrative remedy program similarly provided a remedy to Jackson-

13

Bey. Therefore, Jackson-Bey's Eighth Amendment claims are not cognizable under *Bivens* and are dismissed.

### d. Negligence

Although Jackson-Bey brings constitutional claims, he scatters the word "negligence" throughout in his complaint. (*See* Doc. 1 at 4–6, 9, 12, 21, 23) To the extent that Jackson-Bey attempts a claim of negligence against the defendants under Florida law, supplemental jurisdiction over this claim is denied under 28 U.S.C. § 1367(c)(3) (a "district court[] may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction"); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) ("The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court."); *see also Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

### III.    CONCLUSION

The complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE** to the filing of an amended complaint. The failure to timely file an amended complaint will result in the dismissal of this action without further notice. The clerk must send to Jackson-Bey a civil rights complaint form. Jackson-Bey's failure to return the completed form within **THIRTY (30) DAYS** will result in the dismissal of this action without further notice.

14

**ORDERED** in Tampa, Florida on October 17, 2024.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE